JUSTICE COTTER
dissents.
¶24 I dissent. I would conclude the District Court erred in several critical respects, and would reverse the entry of summary judgment and remand for further proceedings.
¶25 First, it must be noted that it was Lee who moved for summary judgment against Great Divide; Great Divide did not seek summary judgment on any issue. After a hearing, the District Court not only denied Lee’s motion, but granted summary judgment against Lee sua sponte on the coverage issue. Although we gloss over this fact, this procedural anomaly and the District Court’s ensuing errors of policy interpretation undercut the District Court’s rationale for summary judgment.
¶26 We conclude that Lee should not be heard to argue that the policy amendment limiting the UM coverage raises a question of fact *154 concerning who was actually the named insured at the time of the accident, stating that Lee “conceded the authenticity and applicability of the change in his Reply Brief Supporting Partial Summary Judgment on coverage.” ¶ 19. This is an unfair observation. As Lee points out in his Reply Brief, he made this stipulation as the party moving for summary judgment-i.e., he conceded that for purposes of summary judgment any question concerning designation of the named insured would be construed in favor of Great Divide as the non-moving party. This procedural context is important for three reasons. First, it is wholly inequitable to twist a concession made by the moving party solely for purposes of summary judgment into a binding admission against him, especially when he never saw it coming. Second, Lee had no opportunity to hear, much less refute, the rationale the District Court would eventually adopt in its order of summary judgment in favor of Great Divide. Finally, Great Divide’s counsel conceded at oral argument that there were issues of fact regarding whether Lee or the corporation was the named insured, an admission which should generally be fatal to summary judgment, especially when the controlling question is coverage. However, both the District Court and this Court ignore these factors.
¶27 This Court acknowledges that there was a policy amendment that removed Brian Lee as a named insured. See ¶ 19. As Lee pointed out, while the amendment purports to be effective as of March of 2000, the signatures on the endorsement were not entered until after the date of the motor vehicle accident. Moreover, Lee claims he was never advised of the policy change before the accident. As we held in Home Ins. Co. v. Pinski Bros. Inc., 156 Mont. 246, 257, 479 P.2d 274, 280 (1971),
It is axiomatic that an insurer cannot unilaterally alter the coverage afforded by an insurance policy without consideration, without consent, and without notice until after the loss occurs.
At a minimum, Lee’s assertion that he received no notice of the policy alteration until after the accident, not to mention the legal and ethical questions raised by virtue of the post-accident endorsements of the policy amendment, raise genuine issues of fact which should flatly preclude an order of summary judgment, and especially one entered sua sponte.
¶28 Moreover, the District Court’s entire rationale for concluding that Lee must have been riding in a “covered auto” in order to secure UM coverage under the Great Divide policy was erroneous, because the District Court relied upon the wrong exclusion in the policy. The exclusion relied upon by the District Court referred back to an accident *155 involving “a vehicle described in paragraph b.” “Paragraph b” addressed accidents involving underinsured vehicles, and imposed the exclusion for persons not riding in covered autos. Here, however, the tortfeasor’s vehicle was uninsured. As such, this accident was governed by “paragraph a,” which contains no exclusion for persons not riding in covered autos. Thus, while Great Divide’s policy excluded accidents with an underinsured motor vehicle when the insured is occupying a non-listed auto, it does not exclude accidents with an uninsured vehicle occurring while occupying a non-listed auto. Notably, Lee pointed out this crucial error in the District Court’s analysis in his opening brief on appeal (by virtue of the sua sponte entry of summary judgment, this was his first opportunity to do so), and Great Divide tacitly acknowledged the error in its response brief. Moreover, this correct reading of the policy is consonant with the fact that UM coverage is mandatory, personal and portable. Jacobson v. Implement Dealers Mut. Ins. Co., 196 Mont. 542, 544, 640 P.2d 908, 912 (1982); Section 33-23-201, MCA.
¶29 I also take issue with the Court’s conclusion that Lee’s notice to Great Divide was unfair and therefore provided an additional basis for denying coverage as a matter of law. ¶ 21. Lee’s counsel submitted a claim for coverage to Great Divide in September of2003, upon learning of the existence of the Great Divide policy. In response, Great Divide denied coverage. It denied coverage a second time late in 2004 after receiving from Lee of a copy of the complaint against the tortfeasor, and before default judgment against the tortfeasor was taken. For Great Divide to belatedly claim prejudice by virtue of late service of the complaint against the uninsured driver rings hollow under these circumstances, especially in light of its own adjuster’s testimony that she never performed an investigation when the claim was first presented because in her judgment, there was no coverage. At a minimum, these facts do not lend themselves to a determination that Great Divide was prejudiced as a matter of law.
¶30 In sum, I disagree with our Opinion across the board. While the questions of coverage and prejudice might have eventually been resolved correctly following a full development of the facts and exploration of the law, these questions were wrongly resolved without notice to Lee, and on the basis of an undeniably erroneous interpretation of the insurance policy by the District Court. For these reasons, I strenuously dissent.
JUSTICES NELSON and LEAPHART join in the Dissent of JUSTICE COTTER.