**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PROGRESSIVE CASUALTY INSURANCE
COMPANY,
                *Plaintiff-Appellant,*

v.

ARLENE OWEN,
                *Defendant-Appellee.*

No. 06-35677

D.C. No.
CV 05-16-BU-RWA

OPINION

Appeal from the United States District Court
for the District of Montana
Richard W. Anderson, Magistrate Judge, Presiding

Argued and Submitted
December 6, 2007—Seattle, Washington

Filed March 26, 2008

Before: M. Margaret McKeown and Richard R. Clifton,
Circuit Judges, and William W Schwarzer,* District Judge.

Opinion by Judge Schwarzer

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

## COUNSEL

Robert J. Phillips and Amy O. Duerk, Phillips & Bohyer, P.C., Missoula, Montana, for the plaintiff-appellant.

Robert G. McCarthy, McCarthy Law Office, P.C., Butte, Montana, for the defendant-appellee.

## OPINION

SCHWARZER, District Judge:

Progressive Casualty Insurance Company ("Progressive") appeals the district court's summary judgment in favor of Arlene Owen ("Arlene") and its denial of summary judgment in favor of Progressive. Progressive argues that the district court improperly rewrote an insurance policy issued to Owen Trucking to include Arlene as a named insured. Progressive also argues that the district court erred in denying Progressive's summary judgment motion because Arlene was not occupying an insured auto at the time of her accident. We agree, and we therefore reverse the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

Arlene is the former vice-president, secretary, and director of Owen Trucking, a corporation whose sole shareholders were Arlene and her ex-husband, Curtis Owen ("Curtis"). Owen Trucking was in the business of hauling talc from talc mines. Arlene worked at Owen Trucking for two to four hours per week doing office work. Progressive issued a commercial auto insurance policy to Owen Trucking for twelve of its vehicles. The declarations pages, which are expressly made part of the policy, listed the named insured as "BENNETT OWENTRUCKING I." The declarations also listed ten drivers, not including Arlene. Arlene's name does not appear on the declarations pages or anywhere else in the policy. The policy was silent regarding coverage for officers, directors, owners, or employees.

On the day of the accident that gave rise to this case, Arlene was assisting her friend Craig Cornell ("Cornell") in loading and tying down hay bales on a semi-truck and trailer owned by Cornell. Cornell was not an employee of Owen Trucking and his truck was not insured under Owen Trucking's policy. Arlene had driven the truck, with Cornell as passenger, to the loading site. At the site, while Arlene was standing approximately 15 feet from the truck, the loaded hay bales shifted and a hay bale fell on her, causing serious, disabling injuries. Arlene recovered $862,000 from the insurer of Cornell's truck. She also received $100,000 under the underinsured motorist coverage of her personal auto insurance policy. She then made a claim on Progressive for underinsured motorist and medical benefits payments under Owen Trucking's policy.

Progressive filed an action in the U.S. District Court for the District of Montana seeking a declaratory judgment that Arlene was not covered under Owen Trucking's policy. The parties filed cross-motions for summary judgment. The district court granted Arlene's motion and denied Progressive's. The court held that it was "impossible to discern" who was covered under the underinsured motorist and medical benefits provisions. The court further held that this ambiguity created illusory coverage in violation of public policy because a corporation cannot suffer bodily injuries and incur medical bills. The court concluded that it had "no other choice" but to rewrite the policy to include Arlene as a named insured. Because the court held that Arlene was a named insured, it did not reach the question whether Arlene was occupying a covered auto under Owen Trucking's policy. Progressive filed a timely notice of appeal.

## DISCUSSION

### I. Standard of Review

We review the district court's grant of summary judgment de novo. *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773,

780 (9th Cir. 2006). "Viewing the evidence in the light most favorable to the nonmoving party, [the Court] must determine whether there are any genuine issues of material fact and whether the district court properly applied the relevant substantive law." *Id.* The law of Montana applies in this diversity action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

**[1]** Interpretation of an insurance policy is a question of law. *Miller v. Title Ins. Co. of Minn.*, 987 P.2d 1151, 1154 (Mont. 1999). "In interpreting insurance contracts, the words of the policy are to be understood in their usual meaning; common sense controls." *Dakota Fire Ins. Co. v. Oie*, 968 P.2d 1126, 1131 (Mont. 1998). A policy is ambiguous "only when the contract taken as a whole in its wording and phraseology is reasonably subject to two different interpretations." *Canal Ins. Co. v. Bunday*, 813 P.2d 974, 977 (Mont. 1991). "If the language of a contract is unambiguous and subject to only one meaning, there is no basis for the interpretation of the policy coverage under the guise of ambiguity." *Id.*

## II. The Policy Language

The underinsured motorist provision (UIM) of the policy provides:

> Subject to the Limits of Liability, if **you** pay the premium for Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the owner or operator of an **underinsured auto** because of bodily injury:
>
> 1.  Sustained by an insured.
> 2.  Caused by an accident.
> 3.  Arising out of the ownership, maintenance, or use of an underinsured auto.

(Bolding in original.)

The policy defines an "insured" for purposes of the UIM coverage as follows:

a.   If the named insured is a person:

    i.   **You** or a **relative**.
    ii.  Any other person **occupying your insured auto**.
    iii. Any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person in i. or ii. above.

b.   If the named insured is a corporation, partnership, organization or any other entity that is not a living person:

    i.  Any person **occupying your insured auto**.
    ii. Any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in i. above.

The declarations page of the policy identifies "BENNETT OWENTRUCKING I" as the named insured. Accordingly, only section (b) under the definition of "insured" is relevant under the policy. The policy defines "you" as "the named insured." It defines "your insured auto" as "any auto described in the Declarations and any auto you replace it with." "[I]nsured auto" is further described as

c.   Any **auto** not owned by **you** while **you** are temporarily driving it as a substitute for any other auto described in this definition because of its withdrawal from normal use due to breakdown, repair, servicing, loss, or destruction.

The medical benefits section of the policy is substantially similar. It provides coverage for medical and funeral expenses

due to bodily injury sustained by an "insured" and caused by an accident arising out of the ownership, maintenance and use of any auto. The medical benefits section provides that if the named insured is a person, "insured" means the named insured or a relative while occupying an insured auto. "Insured" also includes any other person occupying an insured auto. As described above, the policy defines "insured auto" as any auto listed in the declarations and any auto not owned by the named insured that is being used as a substitute for a covered auto because of breakdown, repair, servicing, loss, or destruction.

### III. The District Court's Rationale

The court began its analysis by quoting the insuring agreement (quoted above) providing for the payment of damages for "bodily injury." It then observed:

> Thus, it would be reasonable to expect that a commercial policy that purports to provide uniquely human benefits must have intended to extend those benefits to some person or persons. The question is who?

*Progressive Cas. Ins. Co. v. Owen*, 456 F. Supp. 2d 1205, 1208.

The court went on to answer that question:

> Where, as here, an exact answer is totally impossible to discern from the shifting provisions of the policy, it would be reasonable to expect that the individuals covered for these benefits would include, at a minimum, the owners, officers, and directors of the corporation. Certainly no express policy provision excludes them.

*Id.*

The court next focused on the policy definition of "named insured", which in the case of a corporate insured, includes "any person occupying your insured auto." It then looked to the clause providing coverage for "any auto not owned by you while you are temporarily driving it as a substitute." This definition, the court found, made no sense because "a corporation cannot drive an auto." Thus, the court "[could] come to no conclusion other than to add human named insureds as to those coverages that by their very nature can only apply to humans." *Id*. at 1210.

## IV. Analysis

### A.

In focusing its analysis on the substitute vehicle provision, the district court ignored the more broadly applicable policy definition of "insured" as "any person occupying your insured auto." That provision makes it clear that the policy intends to provide "uniquely human benefits . . . to some person or persons." It thus cuts the ground from under the district court's ruling that the terms of the policy require the addition of human named insureds.

**[2]** In construing policy language, the Montana Supreme Court "will read the insurance policy as a whole, and will if possible reconcile its various parts to give each meaning and effect. . . . Furthermore, in determining the contract's purpose and intent, [it] [will] examine the contract as a whole, giving no special deference to any specific clause." *Farmers Alliance Mutual Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998) (citations omitted). Here, the district court, while ignoring the general definition of insured, focused its attention narrowly on the substitute vehicle provision and the words "while you are temporarily driving it." That provision, however, is derivative from the broad definition of insured, extending coverage from persons occupying insured vehicles to those in vehicles used as temporary substitutes. Reasonably interpreted, the

provision's intent is to extend the same benefits to persons occupying a substitute vehicle as to those in owned vehicles. The result we reach is consistent with the district court's prior decision in *Hanson v. Employers Mut. Cas. Co.*, 336 F. Supp. 2d 1070 (D. Mont. 2004), holding that "as long as it is legal for an insurer to sell an automobile liability policy to a corporation which is the named insured, it is legal for the insurer to limit the class of covered individuals to those who are occupying covered vehicles at the time they are injured." We therefore conclude that the provision provides coverage to "any person" driving a vehicle as a temporary substitute for a vehicle named in the policy. The district court erred in reforming the policy to provide coverage to all owners, officers, and directors of the corporate named insured, regardless of whether they were occupying an insured auto.

**B.**

**[3]** While we thus disagree with the district court's reading of the policy, the question remains whether Arlene Owen, while not a named insured under the policy, was entitled to recover under the UIM coverage if she was occupying an insured auto at the time of her accident. It is undisputed that Arlene was not using an auto owned by Owen Trucking at the time of the accident. Accordingly, Arlene would be covered only if the truck she was using was a temporary substitute vehicle. As defined by the policy, a temporary substitute auto is any auto not owned by Owen Trucking that is used as a substitute for an auto listed in the declarations "because of its withdrawal from normal use due to breakdown, repair, servicing, loss, or destruction." Thus, Arlene was covered only if she intended to use an Owen Trucking vehicle but could not because the vehicle was withdrawn from normal use due to breakdown, repair, servicing, loss, or destruction. Progressive was entitled to summary judgment if, viewing the evidence in the light most favorable to Arlene, there was no genuine issue of fact regarding whether Arlene was using a substitute vehicle. *Miles*, 441 F.3d at 780.

**[4]** Arlene alleged that on the day of her accident, she did not use an Owen Trucking vehicle because "more than one of our vehicles was always broken down, in for repairs, or being serviced." Other affiants, such as Arlene's brother Robert McNee, also generally alleged that Owen Trucking's vehicles were frequently withdrawn from use for repairs. This evidence does not establish, however, that Arlene used Cornell's truck because a specific Owen Trucking vehicle that she intended to use was actually withdrawn from service. At most, it establishes that she used Cornell's vehicle because she *assumed* that an Owen Trucking vehicle she wanted to use was unavailable.

**[5]** Arlene also alleged that she used Cornell's vehicle "as a substitute for one of the vehicles owned by [Owen Trucking]" but did not allege that she substituted Cornell's vehicle *because of* the withdrawal from use of an Owen Trucking vehicle due to breakdown, servicing, repair, loss, or destruction. Arlene could have substituted Cornell's vehicle for any number of reasons not mentioned under the policy. Accordingly, this evidence is also insufficient to satisfy the policy requirements.

**[6]** In order to obtain coverage under the substitute auto provision, Arlene must produce evidence either that she intended to use a specific vehicle covered under Owen Trucking's policy but could not because of its unavailability, or that she would have used one of several or even all of the vehicles covered under the policy, but could not because all of the vehicles she would have used were unavailable. There is no evidence in the record, however, regarding which covered vehicle or vehicles Arlene would have used but for its unavailability. Progressive is therefore entitled to summary judgment because Arlene has presented no evidence that she was using Cornell's truck in place of an Owen Trucking vehicle that was withdrawn from use because of breakdown, repair, servicing, loss, or destruction.

## CONCLUSION

For the reasons stated, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.